UNITED STATES *v.* RUBELLI'S SONS ET AL. (No. 1874).[1]

1. CONSTRUCTION, PARAGRAPH 404, TARIFF ACT OF 1913—IDENTITY—SPELTER, SOFT AND HARD.

Hard spelter, made in Canada from soft spelter imported to Canada from the United States, is, when imported to the United States from Canada, entitled to claim identity as between what was exported from and imported to the United States, within the meaning of paragraph 404, tariff act of 1913, granting free entry to certain American goods returned. What was exported from and imported to the United States was zinc.

2. CONSTRUCTION, PARAGRAPH 404, TARIFF ACT OF 1913—"ADVANCED IN VALUE OR IMPROVED IN CONDITION"—SPELTER, SOFT AND HARD.

Hard spelter, made in Canada from soft spelter brought to Canada from the United States, has not been "advanced in value or improved in condition" within the meaning of that language in paragraph 304, tariff act of 1913, which grants free entry to certain American goods returned.

3. EVIDENCE, PRESUMPTION.—ARTICLES 332 AND 333, CUSTOMS REGULATIONS 1915— PARAGRAPH 404, TARIFF ACT OF 1913.

Compliance with articles 332 and 333, Customs Regulations 1915, which prescribe the manner of proof for claiming free entry under paragraph 404, tariff act of 1913, of American goods returned, raises a presumption that the goods covered by such compliance are the goods they are claimed to be. The failure of the papers complying with these articles to deny in words that the goods had been manufactured in bond or had been allowed drawback raises no presumption that they had; but, on the contrary, the passage of such papers through the collector with no objection from him raises the presumption that they had not. The failure of the collector to fill in the blank spaces provided on the certificate of export to show whether or not the goods were exported with drawback or manufactured in bond raises no presumption that they were, but that they were not.

## United States Court of Customs Appeals, May 8, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8092 (T. D. 37352).

[Modified.]

*Bert Hanson*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane* and *Albert MacClellan Barnes, jr.*, of counsel) for appellees.

[Oral argument Apr. 18, 1918, by Mr. Hanson and Mr. Lane.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Merchandise known as zinc dross or hard spelter imported at the port of Philadelphia was classified by the collector of customs as unwrought metal and assessed for duty at the rate of 10 per cent ad valorem under that part of paragraph 154 of the tariff act of 1913, which reads as follows:

154. Metallic mineral substances in a crude state, and metals unwrought, whether capable of being wrought or not, not specially provided for in this section, ten per centum ad valorem. * * *

---

[1] T. D. 37645 (34 Treas. Dec., 446).

The importers claimed that the zinc dross or hard spelter was an article the growth, produce, or manufacture of the United States which had been exported to Canada and returned to the United States without having been advanced in value or improved in condition, and that therefore the importation was entitled to free entry under that part of paragraph 404 which reads as follows:

404. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * * but proof of the identity of such articles shall be made under general regulations to be prescribed by the Secretary of the Treasury. * * *

The Board of General Appraisers sustained the protest, and the Government appealed.

The Government contends, first, that the soft spelter sent from the United States to Canada was imported in the form of hard spelter, and that the latter is not entitled to free entry under paragraph 404, inasmuch as it is not the American merchandise exported; second, that some of the soft spelter shipped to Canada was manufactured in bond, and some was allowed drawback, and that, as neither such spelter nor the hard spelter resulting therefrom was entitled to free entry, the entire importation must be subjected to duty in the absence of proof by the importers that none of the hard spelter in controversy was produced from soft spelter entitled to drawback or manufactured in bond; third, that no exported soft spelter which was allowed drawback or manufactured in bond should be admitted free of duty when returned to the United States as hard spelter.

It appears from the record that soft spelter produced in the United States from zinc ores was exported in the form of cakes or blocks to Canada, where it was used by the Page Hersey Iron, Tube & Lead Co. for the so-called galvanizing of iron pipe. The process pursued by the company for the accomplishment of that purpose requires that the soft zinc spelter imported by it should be placed in iron tanks and brought to a molten condition by submitting the cakes or blocks to a temperature of about 800°. After being treated with sulphuric acid to remove scale, and with muriatic acid to secure a surface acceptable to the zinc, the iron pipes to be "galvanized" are immersed in the molten spelter, thereby coating them inside and out with a thin layer of zinc. It seems that the immersion of the cold pipes in the molten zinc produces some crystallization of the melted metal and the crystallized particles thus developed fall to the bottom of the tank, bringing down with them a percentage of the impurities picked up from the pipes.

The material so deposited is hard spelter which, from time to time, is drawn off into molds and redistilled to clear it of its impurities. Hard spelter contains from 92 to 94 per cent of zinc, soft spelter

from 94 to 98½ per cent, and soft spelter, redistilled from hard spelter from 99½ to 99.7 per cent. For "galvanizing" soft spelter produced, from zinc ore is used. Redistilled soft spelter is too costly for any such purpose as that, and is employed in the making of brass and other alloys. Hard spelter has no use save that of remanufacture by distillation, and is worth only 82 per cent of the price of soft spelter derived from zinc ore.

On this state of facts it is very evident that what was exported from the United States was zinc, and that what came back was zinc, which, far from being improved in value and condition, was rendered useless except for remanufacture, and was not only of less value, but was really in a worse condition than when it passed from the United States into Canada. We must therefore hold that the article exported from the United States and subsequently returned thereto was zinc, neither advanced in value nor improved in condition.

The second point made by the Government finally reduces itself to the proposition that the identity of the hard spelter imported with the soft spelter exported and entitled to free entry has not been shown.

The Treasury regulations are not only expressly designed to establish the identity of American goods returned for free entry, but they expressly prescribe the evidence of identity which must be submitted to the collector before such goods can be exempted from duty on importation. By those regulations the Page Hersey Iron, Tube & Lead Co., the foreign shipper, was required to make, and it did make, a declaration before the United States consul that the articles sought to be imported into the United States were, to the best of its knowledge and belief, truly and bona fide the growth, production, or manufacture of the United States. That declaration was required to state, and it did state, not only the port from which and the time at which the soft spelter was exported from the United States, but also the quantity shipped, the shipping marks and numbers, and the numbers of the cars in which the merchandise was shipped.

The Treasury regulations also require that the importer, assignee, or agent should declare, and he did declare under oath, that the zinc dross or hard spelter imported into the United States was truly and bona fide an article the manufacture of the United States which had been exported therefrom and reimported without having been advanced in value or improved in condition, and that no drawback, bounty, or allowance had been paid or admitted thereon. As a check on the declaration of the foreign shipper and that of the importer, his assignees, representatives, or agents, the regulations further require the production, and there was produced in this case, to the collector of customs, at the port of importation, a certificate of exportation from the collector of customs at the port from which the goods were

exported certifying their exportation, their destination, the numbers of the cars in which they were exported, the number and kind of packages exported, the marks and numbers borne by such packages, and whether the goods were allowed drawback or were manufactured in bond. And besides all that, if the value of the goods exceeds $100 and the appraiser's report does not affirmatively show that the merchandise is of domestic manufacture or production, the collector may oblige the importer to furnish within three months after demand either an affidavit of the owner or ultimate consignee or other evidence identifying the returned merchandise as of American manufacture or production. Customs Regulations of 1915 (arts. 332 and 333).

It is hard to conceive of a more complete system than that established by the regulations for following the goods from the time they leave the United States until their return thereto, and compliance with such regulations at least raises a presumption that the goods covered by the papers officially required are in fact the goods which the papers allege them to be. As it was admitted on argument by counsel for the Government that all of the documents and papers prescribed by the Secretary of the Treasury were produced to the collector of customs at the port of importation, we are of the opinion that identification of the goods was fully established in the way and by the evidence exacted by the regulations.

It is true that the papers do not state in words that none of the hard spelter imported resulted from soft spelter manufactured in bond or from soft spelter for which drawback was allowed or from both. If, however, the collector at the port of importation surmised, thought, or believed that the foreign shipper was endeavoring to perpetrate a fraud by exporting for free entry into the United States hard spelter resulting from soft spelter manufactured in bond or which had been allowed drawback, he could have exacted under the regulations additional evidence in order to satisfy his mind as to the status of the soft spelter from which the hard spelter was produced. The collector made no such demand on the foreign shipper and apparently rested his denial of free entry on the finding in effect that soft spelter ceased to be zinc when it took the form of hard spelter, a finding which we have already declined to entertain.

Moreover, the collector by virtue of the Treasury regulations knew not only the full amount of zinc shipped to the Page Hersey Iron, Tube & Lead Co., but also how much of that total was represented by zinc manufactured in bond and by zinc on which drawback had been allowed. The collector consequently was in a position to fully protect the Government against the free entry of more zinc than was warranted by the quantity of American zinc exported, and entitled to exemption from duty.

It is the duty of the collector under the regulations to certify whether American exports have been manufactured in bond or allowed drawback, and the blank certificate of export prescribed by the regulations on its face directs the collector to certify in the blank spaces provided for the purpose whether the goods were exported with drawback, whether there was a remission of the internal revenue tax, whether the goods were manufactured in a bonded warehouse or bonded smelting works, and also the amount of drawback or the remission, if any. In some of the certificates of exportation of soft spelter the collector failed to fill in the blank spaces just mentioned, and such certificates the Government contends must be interpreted as certifying that drawback was allowed or that the goods were manufactured in bond. If that contention is sustained, then we must not only hold that the certificates referred to say something that they do not say at all, but that the omission of the collector in a matter designed to protect the Government must be construed against the importer, who had no control of the collector and neither power nor opportunity to amend an official document which was required to be sent not to the importer but direct to the collector at the port of importation. We can not go that far.

For the proper safeguarding of the customs revenues the regulations and the official blank certificate required the collector to expressly state whether the exported spelter, or any of it, had been allowed drawback or manufactured in bond, and the collector not having certified any such allowance or manufacture, it may be reasonably deduced that there was none to certify. Were we to hold otherwise, then to be consistent, we would have to hold that the certificates which go no farther than to certify "no drawback," must nevertheless be construed as certifying that the goods were manufactured in bond or allowed remission of revenue tax, a conclusion refuted by its own absurdity.

Car numbers were omitted by the collector from some of the certificates, but from the fact that the cars in which the goods were carried over the line are not identified, it can scarcely be said that the goods were not exported. Neither the foreign shipper nor the importer was to blame for that neglect of the collector, if neglect it was, and certainly the right to free entry should not be lost because of an official lapse which made it more difficult to follow the goods, but which the collector at the port of importation might well have remedied by taking advantage of the regulations and demanding the production of evidence as to the exportation of any merchandise concerning which he was in doubt.

Protest 813493 claims free entry for 50,000 pounds of spelter shipped in car No. 305. The certificate of exportation, however, affirmatively shows that that spelter was withdrawn from a bonded

warehouse and therefore under the terms of the statute the hard spelter resulting therefrom is not entitled to free entry.

Protest 813521 claims free entry for zinc exported in car 52328. From the certificate of exportation, however, it affirmatively appears that the 50,008 pounds of spelter so shipped was allowed drawback and therefore none of the hard spelter resulting from that amount of soft spelter is entitled to free entry.

The decision of the board sustaining protest 813493 is affirmed except as to the 50,000 pounds of spelter withdrawn from bond, and exported on April 6, 1916, in car 305, C. & E. I. As to the hard spelter resulting from the spelter so withdrawn, exported, and returned to the United States, the decision is reversed.

The decision of the board sustaining protest 813521 is affirmed except as to the 50,008 pounds of spelter on which drawback was allowed and which was exported on April 27, 1916, in car 52328, "Big 4." As to the hard spelter resulting from the spelter so allowed drawback, the decision is reversed.

The decision of the Board of General Appraisers, sustaining protests 798495, 803513, 807211, 809700, 813523, 816668, is affirmed.

*Modified.*