UNITED STATES *v.* TOWER & SONS (No. 1937).[1]

1. CONSTRUCTION, PARAGRAPH 404, TARIFF ACT OF 1913—IDENTITY—TUNGSTIC ACID AND TUNGSTEN SCRAP.

Tungstic acid having been exported from the United States to Canada and the tungsten having been there recovered from it, the insoluble residue, when brought back to the United States for the purpose of reclaiming the tungstic acid in it, is entitled to claim identity as between what was exported from and imported to the United States, within the meaning of paragraph 404, tariff act of 1913, granting free entry to certain American goods returned.—United States *v.* Rubelli's Sons et al. (8 Ct. Cust. Appls., 399; T. D. 37645). Scraps or clippings of tungsten ingots and wire are not entitled to claim such identity. The insoluble residue is a part of what was exported, while the scraps or clippings are manufactures from what was exported.

United States Court of Customs Appeals, April 1, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42482.

[Modified.]

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellees.

[Oral argument Jan. 15, 1919, by Mr. Hanson and Mr. Tompkins.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Tungstic acid, produced in the United States, was exported to Canada in the condition of an impalpable yellow powder. The

---

[1] T .D. 37981 (36 Treas. Dec., 339).

purpose of the exportation was to use the article in the manufacture of tungsten wire for incandescent lamp fillings. The processes applied in Canada are several. It is first dissolved in ammonia and the resultant insoluble materials filtered out. This rejected material is called an "insoluble residue" and consists of small lumps of clay-like material said to contain tungsten, lime, and other impurities. This is one of the substances imported and the subject of this appeal. It is represented by Exhibit 1 herein. While the record does not fully disclose the facts, it ⌐v fairly be inferred that the next applied process produces metallic tungsten cast in small ingots, the clipped ends of which, consisting of small metallic cubes which likewise were imported into this country, constitute the second class of substances the subject of this appeal and are represented by Exhibit 2 herein. The tungsten ingots apparently are then by various processes of wire drawing made into wire of different sizes, some about one-sixteenth of an inch in thickness and others of the fineness of human hair. Scraps of such wire constitute the third class of substances, the subject of this appeal, and are represented by Exhibit 3 herein.

These importations consisting of the foregoing three classes of goods were entered by the importers as "scrap tungsten" and classified for dutiable purposes by the collector of customs at the port of Buffalo, N. Y., as "tungsten," under the provisions of paragraph 102 'of the tariff act of 1913, providing, among other things, for "tungsten and wolfram metal."

The importers protested, alleging all the heretofore described substances entitled to free entry as "American goods returned," under paragraph 404 of the free list of the tariff act of 1913, in pertinent part reading:

404. Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * *.

It is conceded by all parties to the record that the regulations governing such claims have been duly complied with and that the importations were produced from articles exported from the United States in the manner hereinbefore stated. The board sustained the protest as to all three classes of the importations. The Government appeals.

The precise scope of paragraph 404 as indicated by its legislative history has previously been considered by this court. In United States v. Saunders (8 Ct. Cust. Appls., 82; T. D. 37200), this court pointed out that by the tariff act of 1890, paragraph 493, the corresponding paragraph of the tariff act of 1883, paragraph 649, was materially changed. That while the latter act extended free importation only to articles the growth, produce, and manufacture of the United States *which had been returned in the same condition as ex-*

*ported*, the subsequent acts of 1890, 1894, 1897, 1909, and 1913, all of which were alike in this respect, extended free entry to articles the growth, produce, and manufacture of the United States when returned after having been exported *without having been advanced in value or improved in condition.* This legislative change unquestionably contemplated such articles might thereafter be imported though *changed in condition*, provided, however, they were not *advanced* in value or *improved* in condition.

There is no dispute in the record, we think, that no one of these classes of importations as imported was advanced in value or improved in condition. These facts are not disputed. Nor is it disputed that all the importations were returned solely to reclaim the tungstic acid in them, and in the condition imported were fit for no other use. It is disputed, however, by the Government that they are in the changed conditions as imported "*articles* the growth, produce, or *manufacture* of the United States."

We think that the first class of importations, referred to as the "insoluble residue" (Exhibit 1), is ruled by United States *v.* Rubelli's Sons et al. (8 Ct. Cust. Appls., 399; T. D. 37645). That case concerned hard spelter imported into the United States after being produced from soft spelter exported therefrom to Canada. The spelter was of zinc used to galvanize pipes. The court, after stating that the soft spelter was melted to galvanize pipes, described the process of production of the imported hard spelter therefrom as follows:

After being treated with sulphuric acid to remove scale, and with muriatic acid to secure a surface acceptable to the zinc, the iron pipes to be "galvanized" are immersed in the molten spelter, thereby coating them inside and out with a thin layer of zinc. It seems that immersion of the cold pipes in the molten zinc produces some crystallization of the melted metal and the crystallized particles thus developed fall to the bottom of the tank, bringing down with them a percentage of the impurities picked up from the pipes.

The material so deposited is hard spelter which, from time to time, is drawn off into molds and redistilled to clear it of its impurities. Hard spelter contains from 92 to 94 per cent of zinc, soft spelter from 94 to 98.5 per cent, and soft spelter redistilled from hard spelter from 99.5 to 99.7 per cent.

The process of production therefore of hard from soft spelter was but a process of segregation or elimination. So here the process of producing this "insoluble residue" is but a process of segregation or elimination, and the cases do not seem to be distinguishable. The processes applied are not manufacturing processes. No new article of manufacture is produced. United States *v.* Maine Central Railroad Co. (7 Ct. Cust. Appls., 114; T. D. 36427), and cases therein cited.

The other two classes of importations here made, however, seem to the court to be distinguishable. The tungstic acid in the condition of a powder has undergone such processes of manufacture as to

produce an entirely different article—a metal. Indeed, the third class of these importations has undergone further processes of manufacture producing from the metal ingots—wire. While the intent of Congress to permit free entry of such articles *changed in condition* must be observed, there is no warrant in going so far in that observance as to defeat the limitations afforded by the language of the provision granting this right of free importation. If the returned articles are manufactured articles the paragraph provides they must be "manufactures of the United States" returned after having been exported. These two last classes of merchandise are manufactures, or residues thereof, not of the United States but of Canada, the manufacturing processes, the result of which gives them their names, characters, and uses, whatever they may be, having been applied in Canada. As returned, they are not the same article changed in condition, but different articles produced by different manufacturing processes applied not in the United States but in Canada. The court therefore is of the opinion that they are not entitled to free entry under this paragraph.

It is urged by counsel for importers that if not entitled to free entry under said paragraph, these two classes of importations should be classified as waste. The protest does not make this claim nor was the point decided by the board, hence is not within the issues before this court and not here decided.

The court is of the opinion, therefore, that the decision of the board as to the importations represented by Exhibit 1 styled "insoluble residue" should be affirmed, and as to the remainder of the importations the decision of the board should be reversed, without affirming the decision of the collector. Accordingly ordered.

*Modified.*