UNITED STATES *v.* BRUNSWICK RADIO CORP. (No. 3789)[1]

[1] T. D. 47374.

United States Court of Customs and Patent Appeals, November 5, 1934

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *John F. Kavanagh*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 2, 1934, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain broken phonograph records, assessed by the collector at the port of Pembina, N. Dak., as waste, not specially provided for, at 10 per centum ad valorem under paragraph 1555 of the Tariff Act of 1930, free of duty as American goods returned, without having been advanced in value or improved in condition under paragraph 1615 of that act.

Paragraph 1555, and the pertinent part of paragraph 1615, read as follows:

PAR. 1555. Waste, not specially provided for, 10 per centum ad valorem.

PAR. 1615. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means if imported by or for the account of the person who exported them from the United States; * * * but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury * * *.

It appears from the record that certain "talking-machine recording compound" in the form of substantially square sheets about the size of phonograph records, manufactured by a patented process at Muskegon, Mich., was shipped to the Brunswick Radio of Canada, Ltd., consignee, Toronto, Canada, owned and controlled by appellee where it was manufactured into phonograph records.

The court below accurately described the method by which the exported material was made into phonograph records as follows:

* * * The phonograph record is made by putting a master record of metal together with a sheet of the recording compound in a steam press and

applying pressure and heat so as to melt the compound to such an extent that with the pressure an impression of the master record will be made upon the compound. The compound is then trimmed to a circular shape and by means of a buffer it is polished.

It further appears from the record that after the exported material was manufactured into phonograph records, and the records shipped by the manufacturer to its "branches" in Canada, it was discovered that a great number of them were defective; that, thereafter, the defective records were broken into comparatively small pieces, imported into the United States by appellee, and placed in mixing vats and remanufactured into sheets of recording compound; and that the imported merchandise, which was designated by the witness Siddons, who testified for the importer, as "scrap" and "broken scrap," is valued at about 50 per centum of the value of the recording compound.

On this record, the trial court, in an opinion by Keefe, J., held, on the authority of our decision in the case of *United States* v. *Tower & Sons*, 9 Ct. Cust. Appls. 135, T. D. 37981, that the imported merchandise was a manufacture of the United States, "returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means." In so holding, the court said:

\* \* \* The processes necessary to make the phonograph record do not in any way change the material in the recording compound. The application of heat is not a manufacturing process, nor would be the polishing and trimming, but the imprinting thereon of the lines which reproduce sound when the record is put into a phonograph is a process of manufacture because the article has a new use and assumes the name of "phonograph record."

But if the process is not a success, and an article is produced which is defective so that it cannot be successfully used as a phonograph record, it has not gained by the process any characteristics or use other than it had at the time it was shipped from the United States. Merchandise is classifiable in the condition as imported. When the articles in question were imported they were not phonograph records. They had no new character or use other than that of talking-machine recording compound. They were not advanced in value or improved in condition. In truth, their value was much less and their condition impaired when imported, as compared with their exported condition. The importation in question, in our opinion, is much like that of the insoluble residue in the *Tower* case, *supra*, which was held by the court to be entitled to free entry as American goods returned. Following the holding in that case and the case of *Myers & Co.* v. *United States*, Abstract 9773, wherein this court held that broken records returned to the United States after having been exported as record stock were not advanced in value nor improved in condition, wo' hold that the broken records in question are entitled to free entry under paragraph 1615 of the Tariff Act of 1930.

In our opinion the real issue in the case, although it is not discussed in the brief of counsel for the Government, is whether the imported merchandise is the merchandise exported from the United States, changed in condition only, without having been advanced in

value or improved in condition by any process of manufacture or other means, or is it, on the contrary, waste, produced by the breaking of articles which were manufactured in Canada from the exported material. · If it is the former, it is entitled to free entry, as held by the trial court. If it is the latter, it is not exported articles returned to the United States, but Canadian goods imported into the United States, and, therefore, dutiable as assessed by the collector.

In the case of *Buschoff* v. *United States*, 1 Ct. Cust. Appls. 336, T. D. 31433, this court held that imported hides, taken from animals exported from the United States, were distinct and different commodities from the animals exported, and, therefore, not entitled to free entry as American goods returned under paragraph 438 of the Tariff Act of 1897. On rehearing, 3 Ct. Cust. Appls. 1, T. D. 32285, the court adhered to its original decision.

In the case of *United States* v. *Tower & Sons, supra,* this court held, on the authority of its decision in the case of *United States* v. *Rubelli's Sons et al.,* 8 Ct. Cust. Appls., 399, T. D. 37645, that tungstic acid, exported from the United States to Canada, and there, by a "process of segregation or elimination," tungsten recovered from it, leaving an "insoluble residue" which was returned to the United States for the purpose of reclaiming such tungstic acid as remained in it, was free of duty as American goods returned. The court, in so holding, clearly stated that the "insoluble residue" was not the product of a manufacturing process in Canada. The court also held in that case that scraps or clipped ends of small ingots of metallic tungsten, the ingots being produced by a manufacturing process, and scraps of wire, the wire being produced from tungsten ingots by a manufacturing process, were not free of duty as articles returned under paragraph 404 of the Tariff Act of 1913. In so holding, the court said:

* * * While the intent of Congress to permit free entry of such articles *changed in condition* must be observed, there is no warrant in going so far in that observance as to defeat the limitations afforded by the language of the provision granting this right of free importation. If the returned articles are manufactured articles the paragraph provides they must be "manufactures of the United States" returned after having been exported. These two last classes of merchandise are manufactures, or residues thereof, not of the United States but of Canada, the manufacturing processes, the result of which gives them their names, characters, and uses, whatever they may be, having been applied in Canada. As returned, they are not the same article changed in condition, but different articles produced by different manufacturing processes applied not in the United States but in Canada. The court therefore is of the opinion that they are not entitled to free entry under this paragraph.

The trial court was of opinion, as stated in the quoted excerpt from its decision, that, although the process of manufacturing phonograph records from the material exported from the United States was a manufacturing process, such records as were defective had not gained by such manufacturing process any characteristics or uses other than

those possessed by the material from which they were made. The court also held that the imported material "is much like that of the insoluble residue in the *Tower* case, *supra*," which was held to be entitled to free entry as American goods returned, in that it had been changed, but not improved, in condition; and that, as it was worth much less than the exported material, it was entitled to free entry under paragraph 1615, *supra*, as American goods returned.

The process of converting the exported material into phonograph records is a manufacturing process. The resultant of that process, whether it be defective or otherwise, is a manufactured article having a new name, character, or use. Of course, if the phonograph records were so defective that they were wholly unfit for use as such, they might, as they were in the case at bar, be used as scrap material for remanufacture into recording compound. Nevertheless, such scrap material is the resultant of a manufacturing process in Canada. It was not produced by a "process of segregation or elimination," as was the "insoluble residue" held to be American goods returned in the case of *United States* v. *Tower & Sons, supra*. We conclude, therefore, that the involved merchandise is not the American product exported from the United States, merely changed in condition, but, on the contrary, is a wholly different article, produced by manufacturing processes in Canada. Accordingly, the mere fact that it is worth less than the material out of which it was manufactured is not of consequence. We think the quoted excerpt from the decision of this court in the case of *United States* v. *Tower & Sons, supra*, is applicable here. Holding these views, we deem it unnecessary to discuss other issues presented by counsel for the Government.

For the reasons stated, the judgment is *reversed*.