A. N. DERINGER, INC.

v.

UNITED STATES.

C.D. 4564; Port of St. Albans, Court No. 72–12–02490 on American goods returned (revolvers).

United States Customs Court.
Nov. 5, 1974.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (Wesley K. Caine, Trial Atty., New York City), for defendant.

RICHARDSON, Judge:

In this case the defendant moves for summary judgment dismissing the action, contending that there is no triable issue in the case, and that as a matter of law judgment should issue in defendant's favor. The merchandise in issue consists of .38 special caliber revolvers imported from Canada and classified in liquidation upon entry at the port of St. Albans, Vermont, under TSUS item 730.19 or as modified by T.D. 68–9, at the duty rates of 22 *per centum ad valorem* plus $1.40 each or 19.5 *per centum ad valorem* plus $1.26 each, depending upon date of entry. It is alleged in the complaint that the revolvers should be classified as American goods returned, duty free, under TSUS item 800.00.* In its answer the defendant denies this and all other material allegations of the complaint.

In the moving papers defendant asserts as fact that the merchandise in issue is described on the entry papers as ".38 special caliber Smith & Wesson revolvers", that said revolvers were imported into the United States from Canada in the years 1965 and 1968 for the account of Century Arms, Inc. of St. Albans, Vermont, who purchased them as used .38 caliber Smith & Wesson revolvers, had them "rechambered" to become .38 special caliber Smith & Wesson revolvers, and imported them into the United States as such under Department of State license numbers 00751, 12333, and 13896, that on each of the aforesaid licenses was endorsed the statement [or its equivalent] "Revolvers substantially transformed in accordance with Section 121.02(b), International Traffic of [sic] Arms", and that customs Form 4467 required by 19 C.F.R. § 10.1(a) for merchandise claimed to be American Goods Returned, was never filed with respect to said revolvers.

These assertions of fact are not refuted by the plaintiff. However, plaintiff asserts as fact that the "rechambering" of the revolvers was not an advancement in value or an improvement in condition, and that the customs officials at the port of entry waived the filing of customs Form 4467.

According to the moving papers the "rechambering" operation to which the imported revolvers were subjected involved the use of a chambering tool to machine out the cylinder bores to .38 special dimension for the accommodation of higher caliber cartridges. The effect of rechambering on the revolvers is stated in the opposing papers as follows:

> The rechambering deepens the original chamber to the extent necessary to accommodate the greater length of the .38 special cartridge, but does not alter the original .38 chamber mouth diameter which is approximately .010 inch oversize. Because of this, upon firing the .38 special cartridge, exces-

---

* An alternative claim for classification of revolvers under TSUS item 806.20 was abandoned; and the reference in the complaint to revolvers is deemed by the parties to cover only the .38 special caliber revolvers and not any other type of revolver which may have been included in the importation.

.. 
sive expansion or deformation of the cartridge case head occurs, which may cause splitting or rupturing of the case, also escape of powder gases. This would destroy any further utility of the cartridge case for reloading.

The deepening of the original chamber produces a rough, annularly grooved surface which interferes with proper extraction of the fired cases. This is caused by radial expansion of the case into the grooves, which is not entirely compensated for by afterfiring contraction. Therefore, when an attempt is made to extract the fired case, there is interference between the grooves and the expanded portion of the case, making extraction too difficult from a practical user's point of view.

Insofar as subsequent use of the original .38/200 cartridge is concerned, the deepening of the chamber produces approximately one-half inch of free travel of the .38 bullet in a passage approximately .015 inch too large in diameter for the bullet. This, in combination with the rough finish just mentioned, produces excessive deformation and disorientation of the projectile, resulting in greatly reduced accuracy. [Affidavit dated May 31, 1974 of George C. Nonte, Jr., Maj. Ord.Ret.]

The defendant contends on this motion that the rechambering operation precludes the plaintiff from claiming free entry for the revolvers under item 800.00 because the rechambering in effect transformed the revolvers into foreign articles, calling attention to 22 U. S.C.A., section 1934(a) and (b) and regulations of the Department of State promulgated thereunder. The plaintiff on the other hand does not dispute the fact that the rechambering of the revolvers resulted in their substantial transformation. Plaintiff contends that the rechambering operation was designed to render the revolvers incapable of further military use, and in fact resulted in the revolvers being of lesser commercial value, and, therefore, not disqualified from free entry because of the rechambering. Additionally plaintiff contends that compliance with the customs regulations concerning the filing of customs Form 4467 was waived by the customs officials at the port of entry because the revolvers were die stamped "Made in the U.S.A.". Thus, plaintiff maintains that the facts underlying its contentions herein pose issues that should only be resolved by trial.

Section 1934(b) reads in relevant part:

(b) As prescribed in regulations issued under this section, every person who engages in the business of manufacturing, exporting, or importing any arms, ammunition, or implements of war, including technical data relating thereto, designated by the President under subsection (a) of this section shall register with the United States Government agency charged with the administration of this section, and, in addition, shall pay a registration fee which shall be prescribed by such regulations. Such regulations shall prohibit the return to the United States for sale in the United States . . . of any military firearms or ammunition of United States manufacture furnished to foreign governments by the United States under this chapter or any other foreign assistance program of the United States, whether or not advanced in value or improved in condition in a foreign country. *This prohibition shall not extend to similar firearms that have been so substantially transformed as to become, in effect, articles of foreign manufacture.* [Emphasis added.]

It appears from documents attached to the moving papers that the imported revolvers were formerly .38 caliber Smith & Wesson revolvers of United States manufacture which were shipped to New Zealand under the Lend Lease Act of 1941. Firearms of this caliber were included in the Munitions List designated in regulations promulgated by the Department of State in the years 1965 and 1968 pursuant to section 1934(a).

These regulations require the issuance of a license from the State Department as a condition precedent to the importation of listed munitions into the United States, including those of American origin that have been so substantially transformed abroad as to become in effect articles of foreign manufacture.

As to what constitutes substantial transformation section 121.02 of the regulations [in effect in 1965] states in part:

As used in § 123.03(d) of this subchapter the term "substantially transformed" shall refer to the realteration of firearms abroad to accomplish the following changes:

\* \* \* \* \* \*

(b) As applied to pistols and revolvers, the changes must have included at least either (1) re-chambering or (2) modification of the cylinders for the accommodation of a lower or higher caliber cartridge. [22 C.F.R. § 121.02.]

■ Apart from statutory and regulatory considerations, it is well settled that American products that have undergone changes in foreign countries which convert them to new and different uses lose their identity as American products upon their importation into the United States. United States v. Tower & Sons, 9 Ct.Cust.Appls. 135, T.D. 37981 (1919). The question presented in the *Tower* case was whether imported products derived from tungstic acid exported from the United States could enter this country duty free under paragraph 404 of the Tariff Act of 1913, a predecessor of item 800.00. In rejecting free entry for the derivatives metal ingots and wire, the Court of Customs Appeals said (p. 138):

. . . While the intent of Congress to permit free entry of such articles *changed in condition* must be observed, there is no warrant in going so far in that observance as to defeat the limitations afforded by the language of the provision granting this right of free importation. If the returned articles are manufactured articles the paragraph provides they must be "manufactures of the United States" returned after having been exported. These two last classes of merchandise are manufactures, or residues thereof, not of the United States but of Canada, the manufacturing processes, the result of which gives them their names, characters, and uses, whatever they may be, having been applied in Canada. As returned, they are not the same article changed in condition, but different articles produced by different manufacturing processes applied not in the United States but in Canada. The court therefore is of the opinion that they are not entitled to free entry under this paragraph.

■ In the instant case the uncontroverted evidence presented on the motion discloses that the changes made in Canada on revolvers of unquestioned American manufacture converted them to new and different uses. After the rechambering operation the revolvers were no longer capable of firing with accuracy the .38 caliber bullets which they had been originally designed to fire. Rechambering suited these revolvers to accept and fire the .38 caliber special bullets—bullets with different dimensions and capacities. And this change necessitated a different nomenclature for these revolvers, i. e., .38 special caliber rather than .38 caliber. It follows, therefore, that the imported revolvers, under the principle of the *Tower* case, must be considered to be products of Canada rather than of the United States.

Section 1934(b) of the State Department regulations promulgated thereunder, speaking in terms of substantial transformation as rendering weapons in effect articles of foreign manufacture, affords the court an additional basis for reaching the same conclusion regarding loss of identity as to the imported revolvers.

■ Inasmuch as the imported revolvers, in the condition in which imported, are products of Canada, it is immaterial whether an advancement in val-

ue or improvement in condition has taken place in connection with their conversion in Canada. Advancement in value and improvement in condition are pertinent considerations under item 800.00 only where it is determined under the evidence that the imported merchandise is the merchandise that was exported. Shell Oil Co. of Canada, Ltd. v. United States, 27 CCPA 94, 98, C.A.D. 68 (1939).

Also, the question of whether compliance with the customs regulations relating to item 800.00 claims was waived poses no issue for the court to decide on this motion. The defendant does not press this objection here, but rather relies wholly on its argument which goes to the merits of the case. The waiver question is procedural in nature and does not go to the merits of the case.

For the reasons stated, the court is in agreement with the defendant that there is no triable issue in the case. On the evidence presented on the motion defendant is entitled to a summary judgment in its favor as a matter of law. Judgment will be entered herein accordingly.