ANDERSON & CO. ET AL. *v.* UNITED STATES (No. 2087).[1]

CONSTRUCTION, PARAGRAPHS 171, 176, AND 647, TARIFF ACT OF 1913—"BARRELS"—
 "MANUFACTURES OF WOOD"—"STAVES"—ENTIRETY.

The importations are a number of sets of barrel staves and the same number of sets of barrel heads and hoops. Before they can be used in barrels, the staves must

---

be bent and have both ends crozed or grooved and chamfered or beveled. These manufacturing processes are too important and essential to permit the denomination of the merchandise as barrels in a knockdown condition and its classification as "barrels" under paragraph 171, tariff act of 1913. While, of course, the staves are "manufactures of wood" (par. 176), they are more specifically provided for as "staves" in paragraph 647.

## United States Court of Customs Appeals, June 2, 1921.

APPEAL from Board of United States General Appraisers, Abstract 44031.

[Reversed.]

Frank L. Lawrence for appellants.

Bert Hanson, Assistant Attorney General (John J. Mulvaney, special attorney, of counsel), for the United States.

[Submitted without oral argument May 24, 1921.]

SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Three thousand sets of barrel staves and 3,000 sets of barrel heads, designed to be made up into lime barrels in this country, and 1,885 sets of barrel staves and 1,885 sets of barrel heads, intended to be made up into fish barrels, imported at the port of Seattle, Wash., were treated as entireties and were accordingly held by the collector of customs to be barrels in a "knocked-down" condition. The merchandise, however was classified as a manufacture of wood and assessed for duty at 15 per cent ad valorem under the provisions of paragraph 176 of the tariff act of 1913, which paragraph, in so far as pertinent, reads as follows:

PAR. 176. House or cabinet furniture * * * and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for in this section, 15 per centum ad valorem.

The importers protested that the barrel staves were not dutiable at 15 per cent ad valorem and that they were entitled to free entry under the provisions of the free list, which, in so far as pertinent to the case, are as follows:

FREE LIST.

That on and after the day following the passage of this act· * * * the articles mentioned in the following paragraph shall, when imported into the United States, * * * be exempt from duty.

PAR. 647. Wood: * * * clapboards, laths, pickets, palings, staves, * * * all the foregoing not specially provided for in this section.

The Board of General Appraisers held that the staves were manufactures of wood, citing United States v. Dudley (174 U. S., 670), and overruled the protest.

The importers appealed and now ask that the decision of the board be reversed.

The staves are straight pieces of wood which are wider at the middle than the ends, and they are planed to a convex surface on one side and

to a concave surface on the other, but are not beveled or grooved at either end and are not bent so as to form the bilge or bulge of the barrel. The testimony in the case establishes without contradiction that the staves have never been assembled into barrels, and that before they can be so assembled or used for the manufacture of barrels they must be steamed or heated and bent by pressure in such a way as to give the barrel a bilge or bulge when the staves are in place and to fit the ends to the head, the staves being broader in the middle than they are at the ends.

It is further established by the evidence that the staves must be chamfered or beveled at both ends and that they must be crozed or grooved at both ends to receive the barrel heads. Without a croze or groove the heads of the barrels could not be held in place, and it would be impossible to assemble the staves into a barrel or make a barrel out of them unless the staves were so crozed or grooved.

The Government contends that the staves, barrel heads, and hoops, imported with them, are the entireties which are designated as barrels in paragraph 171, and that they are neither manufactures of wood, dutiable under paragraph 176 as found by the board, nor staves entitled to free entry under paragraph 647, as claimed by the importers.

It is evident that the staves have been so far advanced by manufacturing processes that they have been committed to the manufacture of barrels and that they are manufactures of wood. Inasmuch, however, as the particular manufacture of wood, known as staves, is provided for by name in the free list, it is evident that staves can not be subjected to duty without violating the plain intent of Congress.

While the staves are to be used in the manufacture of barrels, they can not be used as a finished material for that purpose in their condition as imported, but must be submitted to additional necessary and material manufacturing processes before they can be made up into barrels.

If the staves had been grooved and bent so as to permit of the fitting in of the heads of the barrels, and they were imported with the proper hoops and heads, it might possibly be said that such an importation was an entirety and was barrels in a "knocked-down" condition. As the staves are not so grooved or bent as to permit of the fitting in of the heads, they can not be assembled into barrels, and therefore the importation of which the staves are a part, is not an importation of barrels.

The cases cited by the Government are not in point. The case of Jackson Co. et al. *v.* United States (2 Ct. Cust. Appls., 475; T. D. 32227) involved the classification of cast-iron linings for mantels and fireplaces, consisting of a back piece and two side pieces *complete and ready to be put in place,* and which *when put in place, constituted a complete lining.* In other words, the three pieces were ready to be

assembled into and constituted the entirety known as a lining for mantels and fireplaces. It was accordingly held that the castings were entireties and that although not assembled, they had not lost their status as linings for mantels and fireplaces.

In Knauth v. United States (1 Ct. Cust. Appls., 422; T. D. 31499), it was held that flat cardboards of different sizes and shapes, imported in a "knocked-down" condition, but complete in themselves and ready to be assembled and used as wall pockets, constituted an entirety known as wall pockets and were therefore entireties.

In United States v. Haaker (4 Ct. Cust. Appls., 508; T. D. 33935), it was held that the sculptured figure of a winged woman, mounted upon a pedestal with a carved capital and base, constituted one complete entirety and was dutiable as an entirety.

In United States v. Outerbridge & Co. (7 Ct. Cust. Appls., 223; T. D. 36511), it was held that a marine engine imported was an entirety notwithstanding the fact that some *nonessential* parts did not accompany it.

In this case the staves were not only an essential part of the barrel, but it was essential that they should be at least grooved and bent in order to make them available for the manufacture of barrels.

As the importation here in question had never been assembled into barrels, and could not be so assembled without submitting the staves to further important, material, and necessary manufacturing processes, it can not be regarded as an entirety.

The decision of the Board of General Appraisers is *reversed*.