(C. D. 1000)

PAN AMERICAN AIRWAYS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 19, 1946)

*Lawrence and Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Richard H. Welsh*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: These protests are directed against the action of the collector of customs in assessing duty on merchandise described on the invoices as "prefabricated * * * buildings" at the rate of 33⅓ per centum ad valorem under the provisions in paragraph 412 of the Tariff Act of 1930 for "manufactures * * * of which wood * * * is the component material of chief value, not specially provided for." It is obvious that the collector's assessment was based upon the doctrine of entireties in the sense that the importations represented articles, to wit, houses or buildings in knocked-down

condition, each having an independent identity or character distinct from its various components such as lumber, hardware, etc. The plaintiff, however, denies that the importations are entireties and claims the component parts to be dutiable under the provisions of the tariff law according to the component material of chief value, specific claims being made only as to the lumber and the shingles contained in the importations, and the protest waived as to all other components. Such of the lumber as consists of fir, spruce, pine, hemlock, or larch is claimed to be dutiable at 50 cents per thousand feet, board measure, under the provisions of paragraph 401 of the Tariff Act of 1930, as amended by the Canadian Trade Agreement, T. D. 49752, while that which is of other varieties is claimed to be entitled to free entry under paragraph 1803 (1) of the same act, as amended by the said trade agreement, and both classes of lumber are claimed to be subject to tax or duty at the rate of $1.50 per thousand feet, board measure, under the provisions of section 3424 of the Internal Revenue Code (53 Stat. pt. 1) as modified by the same trade agreement. The shingles are claimed to be entitled to free entry under the provision therefor in paragraph 1760 of the tariff act.

The facts are not in dispute. The plaintiff desired to erect buildings to house radio apparatus and for administrative purposes in connection with an airport in Alaska. According to its construction supervisor, Mr. Carl R. Stolberg, who testified in its behalf "We wanted a building we could erect with the least amount of trouble in places where we couldn't hire skilled labor." The exporter, which was then a new company, had a patented method of locking the corners of stave lumber together, eliminating nails, and agreed to supply the material for a complete house, except the foundation material, at a single price for the whole. The material included various lengths, cut to size, of the patented stave lumber, studs, joists and rafters, cut to size, as well as all necessary shingles, nails, door casings and frames, sash, flooring, building paper, hardware, electrical wiring, material and fixtures, wood preservative, chimneys, and gutters for the houses. There was also some wood material, such as plywood and certain lumber, not cut to size, used for partitions and paneling, which had to be cut and fitted at the site, but the record indicates that, generally speaking, the material was cut to the proper size indicated by the blueprints furnished by the manufacturer and exporter.

To sum up, as the testimony indicates, the importations included all the material necessary for complete houses, except foundation materials, such as cement and piling, and that as far as possible the materials were in the form and in the quantity required by the blueprint furnished with each shipment.

It is the plaintiff's position that the merchandise involved consists of

material for a building, rather than a building, and in support of this argument cites the case of *United States* v. *Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266. There the court described the merchandise involved as follows:

The imported merchandise consists of pieces of cotton canvas, stamped with designs in various colors, and silk yarn and wool yarn, in corresponding colors, intended to be embroidered over the designs. Each bundle of yarn—silk or wool, as the case may be—was imported with the particular canvas on which it was designed to be used. When, by the use of the yarn, the design on the canvas has been embroidered, the embroidered article is used for making hand bags, bell pulls, hassocks, and cushion, chair, and bench covers. The canvas and the yarns are sold together.

and in disposing of the issue the court said:

The pieces of cotton canvas and the yarn—silk in some instances and in other, wool—are not "parts" capable of being attached or put together by mere assembly. On the contrary, they are mere materials and are intended to be used as such in a process of manufacture, requiring either hand work or machine work to complete the article. It may be that one of the materials—the canvas—has been so far manufactured as to be dedicated to the making of a class of articles, but this is not true of the yarn. While it is a completely manufactured article, it is, nevertheless, material for use in the manufacture of a variety of articles.

If the articles in question are dutiable as entireties, then, by analogy, wool cloth in the piece, designed to be used in the making of a suit of clothes, and silk cloth, intended to be used as lining for the clothes, would be dutiable, not separately as materials, but as entireties—probably as wearing apparel. Obviously, the wool cloth and the silk cloth are not *parts* of a suit of clothes; they are materials out of which a suit of clothes may be manufactured.

The record shows that the yarn in question was intended to be used to embroider the pieces of canvas. If, instead of yarn, the pieces of canvas had been accompanied by embroidery or embroidered articles, designed to be used together by mere assembly to form a new article of commerce, an entirely different question would be presented. However, there is a vast difference between parts, designed to be assembled together to form an entirety, and mere materials requiring, if they are to be used together in the making of an article, that they be subjected to *manufacturing processes*. See *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183, T. D. 38550; *Anderson & Co.* v. *United States*, 11 Ct. Cust. Appls. 107, T. D. 38751. Obviously, the pieces of cotton canvas and the yarn are not parts designed to be assembled together to make a new article; they are mere materials, suitable for use and intended to be used in the manufacture of an article. They are not, therefore, dutiable as entireties. *Anderson & Co.* v. *United States, supra.*

On the other hand, it is the defendant's position that the importations consist of parts which were designed to be, and actually were, joined together or assembled into new articles, to wit, buildings. Cited in this connection is the case of *United States* v. *Kronfeld, Saunders, Inc.*, 20 C. C. P. A. 57, T. D. 45679, from which the following description of the merchandise and issue is taken:

The importation involved in this appeal consists of a platinum bracelet mounting and 234 diamonds imported under the Tariff Act of 1922. The collector classified the merchandise under the jewelry paragraph, 1428, of said act, and assessed it with duty at 80 per centum ad valorem. The importer protested the

classification and assessment of duty and claimed the diamonds were dutiable at 10 or 20 per centum ad valorem under paragraph 1429 of said act as cut diamonds. No question is raised here as to the correctness of the duty levied on the bracelet mounting.

It is shown by the record that the diamonds and mounting were shipped in the same package; that the mounting contained 234 holes for the insertion of the diamonds; that the diamonds were intended for that particular mounting and were afterwards so. used; that all that was necessary to convert the importation into a platinum bracelet set with 234 diamonds was for a diamond setter to set the diamonds in the holes and that such setting was regarded as skilled work.

Do the diamonds and mounting constitute an entirety? This is the sole question in the case.

After citing and discussing many of the judicial precedents on the question of entireties, among them the *Wanamaker* case, *supra*, the court said:

The foregoing authorities clearly establish that when two or more parts of an article are shipped together and are intended to be used together as one article, and by mere assembly they are made into one article, they shall be regarded as entireties for tariff purposes. The record in this case shows by a fair inference that the bracelet mounting was suitable for use as such only when fitted with 234 diamonds. The fitting of the stones, as far as this record shows, involved only the attachment of the same to the mounting. That the assembly required skill and some labor is unimportant. The assembly of some large machines that come into this country requires great skill and much labor, and yet it would be idle to contend that the whole of the assembled parts did not constitute an entirety. This case is not on all fours with the *Wanamaker* case, *supra*, where the yarns and canvas clearly constituted nothing more than mere material with which a figure was to be embroidered. There more than assembly was required to form the article. There independent work was required other than that required for putting two finished parts together.

As to just how much labor may be expended in fitting the article for the assembly without destroying the quality of the combination as an entirety is not before us on this record.

We conclude that the diamonds and the bracelet mounting as imported in the case at bar constituted a bracelet which is commonly known to be jewelry. *United States* v. *Cartier (Inc.)*, 15 Ct. Cust. Appls. 334, T. D. 42493; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219.

Examining the situation before us in the light of the foregoing decisions, we think it may be fairly said that the record shows that nearly all of what might be called the manufacturing operations in connection with the merchandise before us were completed prior to importation. Thus, the patented siding or staves which were to form the outside walls, the wall studs, floor joists, roof rafters and beams, plywood ceiling, floor, and outside wall panels, as well as certain of the studs for inside partitions and panels therefor, were all cut to fit according to the blueprints for the particular buildings. The plywood roof panels were cut to a standard size, and presumably required little, if any, cutting on the job. All of the portions cut to size were so cut as to accommodate door and window frames and millwork of

standard sizes. It appears from the blueprint, collective exhibit 1, that the outside siding pieces, besides being cut, were individually numbered for placement according to the blueprint.

From the foregoing it can be readily seen that by far the greatest task facing the erectors of the buildings was assembly of finished parts, and but a comparatively small amount of the work involved cutting and fitting of materials.

Under these circumstances the case is more akin to the *Kronfeld, Saunders, Inc.*, case, cited by the Government, than the *Wanamaker* case, cited by the plaintiff. We do not think that the comparatively slight amount of work other than assembly required in this case takes it out of the rule laid down in the *Kronfeld, Saunders, Inc.*, case, and the fact that the court considered that in some cases such work might be required is apparent from the following observation:

As to just how much labor may be expended in fitting the article for the assembly without destroying the quality of the combination as an entirety is not before us on this record.

The protest claims are therefore overruled, and judgment will issue accordingly.