(C. D. 1161)

Seideman Products Co. v. United States

59

United States Customs Court, Third Division

(Decided February 24, 1949)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Charles J. Evans* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The merchandise at issue in this action consists of tin cans imported as containers of tuna fish in oil. The tin cans were assessed with duty at the rate applicable to the tuna fish, to wit, 22½ per centum ad valorem under paragraph 718 (a) of the Tariff Act of 1930, as amended by the trade agreement with Mexico, T. D. 50797.

The plaintiff claims that the tin cans are entitled to free entry under the provisions of paragraph 1615, as amended by the Customs Administrative Act of 1938, as American goods returned, not advanced in value; or as containers of domestic manufacture, exported empty and returned as usual containers; or as articles exported for repairs or alterations and dutiable upon their return at the appropriate rate upon the value of the repairs or alterations.

At the trial of this case it was stipulated and agreed between counsel as follows:

MR. TUTTLE: * * * I do offer to stipulate that the merchandise covered by this protest consists of tin cans imported from Peru as containers of tuna fish, and are assessed with duty at the rate applicable to their contents, namely, 22½% under 718 (a) of the Tariff Act of 1930; that the tops, bottoms, and bodies of these cans as described below were exported from Los Angeles on the Steamer Lookout on or about May 26, 1946 under the provisions of Section 10.8 of the Customs Regulations of 1943, and by use of Customs Form 4455; that in their condition as exported from the United States these cans consisted of (a) can bodies which had been notched and edged and with the side seam soldered so as to make a cylindrical form, and thereafter flattened to a narrow obrotund cross-section; (b) can tops and bottoms, circular in form, the edges of which had been curled and to which a sealing compound had been applied; that in Peru, by use of a machine especially designed for that purpose, the flattened bodies were re-formed into cylinders by application of suction whereby the sides were partially forced apart and there was inserted an implement cylindrical in form and with one end cone-shaped. The can body was pushed over this cone onto the cylindrical portion,

and by a process of rolling, the body became cylindrical. Thereupon, the ends of the body were flanged so as to permit the outer-edge portions of the bottoms and tops to be double-seamed. The bottom was then seamed on, the can was filled with tuna, and the top seamed on. After being thus filled with fish and closed, the cans of fish were packed in paper cartons and exported to the United States.

Is that acceptable to the government?

Mr. Vitale: The government will agree to those facts. (Record pp. 2 and 3.)

There were admitted in evidence on behalf of the plaintiff, not marked as exhibits, a customs Form 129, which is an invoice of American goods returned, and an affidavit dated September 3, 1946, giving the cost of assembling the cans in Peru. A can of fish in its imported condition and also an empty can were admitted as illustrative exhibits A and B. A collapsed can body, together with a top and a bottom of same, illustrative of the merchandise exported, was admitted in evidence as collective illustrative exhibit C.

Counsel for the plaintiff contends that the articles exported were tin cans in an unassembled or a knock-down condition and that the articles imported were the same tin cans in an assembled condition, nothing having been added or removed from them. Inasmuch as they were exported and imported as entireties, it is counsel's contention that they should be free under paragraph 1615 (a). *Anderson* v. *United States*, 11 Ct. Cust. Appls. 107, T. D. 38751, and *Hawaii Seishu Kwaisha* v. *United States*, 36 Treas. Dec. 575, T. D. 38065, were cited as sustaining that viewpoint. Relative to classification under paragraph 1615 (a), plaintiff's counsel presents the argument that as the articles exported were tin cans and the articles imported also were tin cans, the labor performed on same in Peru would not necessarily advance the value thereof or improve their condition (citing *United States* v. *Rubelli's Sons et al.*, 8 Ct. Cust. Appls. 399, T. D. 37645). And further, that as Congress intended to favor goods the growth, produce, or manufacture of the United States when imported (citing *Denike* v. *United States*, 5 Ct. Cust. Appls. 364, T. D. 34533), it did not intend that tin cans, exported in a knock-down condition to save freight and packing space, should be assessed with duty when imported as the usual containers of fish.

It is further contended that the tin cans at issue are free under paragraph 1615 (b) as substantial outer containers, exported empty and returned as usual containers of merchandise. Also, that the tin cans, if not entitled to free entry, are subject to duty only upon the value of the alterations performed in Peru, consisting of a restoration. That is to say, the cans are re-formed to their original shape, and an addition is made by attaching the bottoms to the re-formed sides after flanging the sides (citing *Richardson* v. *United States*, 18 Cust. Ct. 109, C. D. 1053).

The Government contends that the tin cans were advanced in value or improved in condition while in Peru to such extent that free

entry under paragraph 1615 (a) would be precluded, also citing *Anderson* v. *United States, supra.* The Government further contends that only pieces of processed tin, rather than complete tin cans in a knocked-down condition, were exported from the United States, and the final processing of the flanges, thus completing the pieces so as to be assembled into tin cans, was performed in Peru. Therefore, Government counsel argues that they are not entitled to classification under duty-free paragraph 1615 (b), as that statute does not provide for free entry of containers manufactured in a foreign country and imported either filled or empty. The Government further contends that the tin cans in question are excluded from the scope of paragraph 1615 (g) for the reason that the turning of the flanges does not come within the purview of an alteration, and also because the material was not exported for repairs.

Title 19, §1201, U. S. C., provides as follows:

PAR. 1615. (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

(b) Steel boxes, casks, barrels, carboys, bags, quicksilver flasks or bottles, metal drums, and other substantial outer containers of domestic or foreign manufacture, exported empty and returned as usual containers or coverings of merchandise, or exported filled with products of the United States and returned empty or as the usual containers or coverings of merchandise, including shooks and staves produced in the United States when returned as boxes or barrels in use as the usual containers of merchandise.

\* \* \* \* \* \* \*

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe. As amended June 25, 1938, 5 p. m. E. S. T., c. 679, §35, 52 Stat. 1092.

We are of the opinion that such tin cans may not be regarded at the time of exportation as being in a knocked-down condition. Even though containers in a knocked-down condition were admissible under the American-goods-returned provision, a question the court does not here decide, the material in question, as exported, failed to represent containers complete within themselves and capable of being assembled into tin cans. The *Anderson* case, *supra*, involved barrel staves and barrel heads designed to be manufactured into barrels in the United States. Upon importation of such material, the collector regarded it as barrels in a knocked-down condition, and thus a manufactured product dutiable as manufactures of wood. The importer contended that the barrel staves were free of duty under

the *eo nomine* provision therefor in the Tariff Act of 1913. The Board of General Appraisers overruled the protest (Abstract 44031). Upon appeal, the Court of Customs Appeals (now the Court of Customs and Patent Appeals) held that the staves and barrel heads were not barrels in a knocked-down condition inasmuch as the staves which were to be used in the manufacture of barrels were not suitable for that use until grooved and beveled at both ends so as to receive the barrel heads. The court was of the opinion that such manufacturing processes were too important and essential to permit the articles to be referred to as barrels in a knocked-down condition and for that reason to be classified as manufactures of wood. The court also was of the opinion that the staves should have been admitted without the payment of duty under the duty-free provision for "staves," as claimed by the importer. Clearly this decision does not support the plaintiff's claim that the tin cans are entireties. Even the dictum of the court to the effect that if the staves had been grooved and bent to permit the fitting on of the heads, and were imported with the proper heads, the articles might be regarded as entireties, does not benefit the plaintiff. Here, the pieces of tin as exported also had to be processed and flanged before becoming capable of having attached thereto the tops and bottoms.

Inasmuch as we are of the opinion that the articles in question were not entireties exported in a knocked-down condition, they cannot be regarded as substantial outer containers exported empty and returned as the usual containers of merchandise.

As to the contention that the articles are subject to duty only upon the value of the alterations performed in Peru, it must be established that tin cans were exported from the United States. It is clear that the material exported was not tin cans. Nor does the *Richardson* case, *supra*, present a parallel situation. In that case the exact article exported was returned, although in a flanged condition. However, that decision was reversed by the Court of Customs and Patent Appeals on November 2, 1948 (C. A. D. 390), for the reason that the parts of machines exported were not completed parts of machines. They required further manufacturing processes in order to reach the state of flanged rims suitable for their intended use. The court significantly stated:

\* \* \* We are of opinion, however, that the Congress did not intend by the term "alterations" in paragraph 1615 (g), *supra*, to mean that uncompleted articles, such as those here involved, manufactured in the United States or imported into the United States, could be exported to a foreign country and there manufactured into completed articles such as those in the case at bar, and when returned to the United States, be subject only to duties on the so-called "alterations" provided for in paragraph 1615 (g), *supra*. It is clear from paragraph 1615 (g), however, that Congress intended to broaden the scope of paragraph 1615 of the Tariff Act of 1930 and to permit articles to be exported not only for the

purpose of repairs but for alterations thereof, and to be returned to the United States upon the payment of a duty upon the value of the alterations, or repairs, at which the articles would be subject if imported in their altered or repaired condition. We are of opinion, however, that it was not intended by the word "alterations," contained in paragraph 1615 (g), *supra*, to permit articles, such as in the instant case, to be exported in an unfinished condition which could not have been classified as parts of machines, and so manufactured abroad that upon their return would be properly dutiable as parts of machines. * * *

As indicated by the appellate court, Congress intended to broaden the scope of paragraph 1615 (g), *supra*, by the addition of the words "or alterations," but not to the extent contended for by the plaintiff. Paragraph 1615 (g) is not here applicable for the further reason that the application of the exemption from duty is limited to such articles as were "exported from the United States for repairs or alterations." The articles in question here were not exported for any such purpose.

For the reasons stated, judgment will be entered in favor of the Government.