(C. D. 1427)

C. S. EMERY & COMPANY v. UNITED STATES

United States Customs Court, First Division

(Decided June 11, 1952)

*Pierce & Plante* (*Hubert S. Pierce* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: The ultimate consignees of the merchandise involved in this case were two farmers each of whom wished to construct a silo on his farm. They contacted a sawmill operator in Canada, gave him the dimensions in height and diameter of the silos they wished to construct, and ordered from him the wooden material for the walls of the silos. In response to the orders, the sawmill operator turned out so-called "match boards" or "match planks," approximately 5¼ inches wide by 1¾ inches thick in their dressed condition, planed on two sides, and tongued and grooved on the edges.

Apparently, some of the material was also tongued and grooved on the ends as well as the edges.

The material was made on a matching machine, which bevelled the edges so that when fitted together one way the necessary curvature for a round silo was obtained, but when fitted together the other way it could be used flat for flooring. The material was of random lengths and there was sufficient in each shipment to construct the wall of one silo.

The collector of customs assessed duty on each shipment at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as supplemented by the Presidential proclamation reported in T. D. 52373, for manufactures of wood, not specially provided for, other than those named therein. The theory of the assessment and the contention of the defendant herein are that each shipment actually consisted of a wooden silo in knocked-down condition, and that while all of the parts of the silo were not included, nevertheless the wooden material imported was so advanced in condition and dedicated to be used in the construction of a silo that it had lost its identity as lumber and assumed the identity of an article manufactured from lumber.

The claim of the plaintiff is for duty at the rate of 25 cents per thousand feet, board measure, under the provisions of paragraph 401 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, for sawed lumber of fir, spruce, pine, hemlock, or larch, not specially provided for, plus 75 cents per thousand feet, board measure, under the provision in section 3424 (a) of the Internal Revenue Code (26 U. S. C. §3424 (a)), as modified by the General Agreement on Tariffs and Trade, *supra*, for fir, spruce, pine, hemlock, larch, or cedar lumber, rough, or planed or dressed on one or more sides. Both paragraph 401, *supra*, and section 3424 (a), *supra*, contain language reading as follows:

In estimating [or determining] board measure for the purposes of this paragraph [or section] no deduction shall be made on account of planing, tonguing, and grooving.

and it follows, therefore, that the provisions for lumber in the said paragraph and section include lumber which has been planed and tongued and grooved.

There does not seem to be any question but that the wood involved was spruce or hemlock, and the only question in controversy is whether it was, in its imported condition, simply planed, tongued, and grooved lumber, or whether it was further advanced than such lumber. It appears from the record that the only physical features of the imported material which would distinguish it from other planed, tongued, and grooved lumber was the fact that the tongued and grooved edges

were made at an angle which would result in a circle when the boards or planks were put together, and that tongues and grooves were put on the ends of some of the boards or planks as well as on the edges.

It clearly appears from the record, however, that these features were put on by operations which were no more than planing, tonguing, and grooving operations, that is to say, the setting of the inclination on the matching machine which tongued and grooved the edges determined the angle of the tongued and grooved edges, and the tongued and grooved ends were produced on the same machine by a separate operation. We are, therefore, of the opinion that the merchandise, as the result of the operations to which it was subjected, was not advanced any further than planing, tonguing, and grooving. Such operations, as hereinabove noted, are within the contemplation of both paragraph 401 and section 3424 (a), *supra*.

The only other fact which would indicate dedication of the merchandise is that each shipment comprised approximately a sufficient number of planed, tongued, and grooved boards or planks to construct one silo. This fact alone does not endow the shipment with the character of a silo or a manufacture of wood as distinguished from lumber material. One may order the quantity of lumber necessary to construct a house or cabin and yet the material received will still be no more than material, rather than a knocked-down or unassembled house or cabin.

The silos in contemplation by the importers in this case were not to be made by mere *assembly* of the imported material, but, rather, the imported material was to be used to *construct* the silos. The distinction is perhaps best demonstrated when the situation which obtained in the case of *Pan American Airways, Inc.* v. *United States*, 16 Cust. Ct. 134, C. D. 1000, is compared with the situation which obtained here. There, all the parts, including lumber, millwork, hardware, etc., for a building were included in an importation and were in such condition as to manufacturing operations performed upon them that "the greatest task facing the erectors was assembly of the finished parts, and but a comparatively small amount of the work involved cutting and fitting of materials." It was there held that the importation was properly assessed as an entirety under the provision for manufactures of wood, not specially provided for, rather than under the provisions of the tariff law applicable to the specific parts.

The record shows that in constructing the silos in contemplation here, doors had to be framed, cut, and built, barn connections made, chutes had to be constructed and placed, and roofs had to be built, largely with materials other than the imported lumber, and that metal parts, such as anchor irons, hoops, and rods, had to be supplied and fitted. In this situation, we do not think that the imported

lumber can be considered as knocked-down or unassembled silos.

Judgment will therefore issue sustaining the protest claims accordingly.