(C. D. 1903)

B. A. McKenzie & Co., Inc. v. United States

United States Customs Court, First Division

(Decided July 31, 1957)

*Lawrence & Tuttle* (*George R. Tuttle, Sr.*, and *Frank L. Lawrence* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *William J. Vitale*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "2-piece stock, sawed lumber, planed, tongued, grooved and edge glued," and was assessed with duty at the rate of 16⅔ per centum ad valorem under the provision for manufactures of wood, not specially provided for, in paragraph 412 of the Tariff Act of 1930, as modified by the Presidential proclamation carrying out the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, reported in T. D. 52373.

Although various claims are made in the protest and by timely amendment thereof, the claim apparently relied upon (being the only one pressed in the brief filed on behalf of the plaintiff) is that for entry free of duty under the provision in paragraph 1803 (1) of the Tariff Act of 1930 for "sawed lumber and timber, not further manufactured than planed, and tongued and grooved; * * * not specially provided for," and subject to tax or duty only at the rate of 75 cents per thousand feet, board measure, under the provision in section 4551 (1) of the Internal Revenue Code of 1954, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for "Lumber, including sawed timber, rough, or planed or dressed on one or more sides * * * cedar."

Imported at the same time and covered by the same entry, but not involved in the protest, was merchandise described on the invoice as "1-piece stock, sawed lumber not further advanced than planed, tongued and grooved." That merchandise was admitted to free entry under paragraph 1803 (1), Tariff Act of 1930, *supra*, and assessed with tax or duty at the rate of 75 cents per thousand feet, board measure, under the Internal Revenue Code, i. e., the treatment, it is claimed, which should have been accorded the 2-piece stock.

Plaintiff's illustrative exhibit 1 represents the merchandise described as "1-piece stock," while plaintiff's illustrative exhibit 2 represents the merchandise described as "2-piece stock."

The evidence establishes that both the 1-piece stock and the 2-piece stock are ultimately used for the same purpose—in the manufacture of sides of drawers for furniture. As imported, they are each manufactured to the same extent with that end in view, the only real difference between them being that, in the case of the 1-piece stock, the wood was originally sufficiently wide for the width dimension desired, while, in the case of the 2-piece stock, the wood originally was not sufficiently wide, and the two pieces were joined together by what is known as the Linderman joint (a type of dovetail joint, running lengthwise) and glued under pressure so as to provide the width desired.

The merchandise at bar was made from reject cedar bevel siding which, for one reason or another, was unsuitable for siding purposes and which was resawn so as to obtain the desired thickness.

The evidence also shows that, before importation, aside from the operations necessary to joining the two pieces, which make up plaintiff's illustrative exhibit 2, by means of the Linderman joint and gluing under pressure, both the 1-piece stock and the 2-piece stock had been planed on both surfaces, "bullnosed" on the top edge and "eased" on the bottom edge (both apparently types of planing), and each had a groove about three-sixteenths of an inch wide and three-sixteenths of an inch deep, cut lengthwise about three-fourths of an inch from the bottom. The effect on the classification of the merchandise of the bullnosing, easing, and grooving is apparently not in dispute and is apparently not considered by the Government as processes further manufacturing the merchandise than the planed, tongued, or grooved state, permitted by paragraph 1803 (1), *supra*.

The record shows that a considerable amount of work remains to be done to the merchandise, after importation, in order to fit it for its ultimate use in the manufacture of drawers. It appears that it is sometimes recut to width and regrooved and, in any event, it is cut to length, chamfered, dovetailed, sanded, and beveled.

Counsel for the plaintiff has pointed out in the brief filed in its behalf, and we are of the opinion that the record supports the statement, that the discrimination in customs treatment between the 1-piece stock and the 2-piece stock—

* * * is based on the theory that the process of combining two pieces to make a merchantable singleton results in removing the material from the status of sawed lumber "not further manufactured than planed and tongued and grooved" to the status of a manufacture.

Counsel argues in the brief that the process of "building up" or "reconstituting" the 2-piece stock by placing the Linderman joint on the edges and gluing the same is not a process of manufacture which would take the merchandise out of the purview of paragraph 1803 (1), *supra*, inasmuch as it was for the purpose of reclaiming scrap wood

and making it fit for use as wood material or lumber upon which the manufacturing processes permitted by paragraph 1803 (1) could be performed.

In this connection, counsel for the plaintiff has cited a number of cases, but we think the rule derived from all of them is succinctly expressed in *Hampton, Jr., & Co.* v. *United States*, 6 Ct. Cust. Appls. 392, 395, T. D. 35926, as follows:

\* \* \* It may be generally said that it has been uniformly held in customs interpretation that the application of processes necessary to produce an article from its native condition and to bring it into a condition that it may be imported, *without affecting its per se character*, is not regarded either as a manufacturing process or as a process advancing it in value or condition. [Italics added.]

Applying the foregoing rule to the merchandise at bar, it will be seen that the processes of effecting the Linderman joint and gluing under pressure made two narrow pieces of wood into one wide piece of wood. The merchandise was merely wood material, lumber, before the processes were applied thereto, and it was wood material, lumber, when it emerged from those processes. Its *per se* character as lumber was not changed at all.

In the brief filed on behalf of the defendant, there is cited as applicable to the 2-piece stock at bar a ruling by the Assistant Secretary of the Treasury Department, dated February 17, 1914, and contained in 26 Treas. Dec. at page 294, T. D. 34198. That ruling related, among other things, to "narrow pieces of wood, the edges dovetailed and glued together," and directed the collector of customs at the port of Buffalo, N. Y., to assess duty thereon as manufactures of wood under paragraph 176 of the Tariff Act of 1913, it being the opinion of the Department that the dovetailing and gluing of the narrow pieces "advances the lumber beyond the condition of planed and tongued and grooved" lumber, provided for in paragraph 647 of the 1913 act.

It is suggested by counsel for the defendant that Congress is presumed to have had knowledge of that ruling and that subsequent reenactments in substantially the same language of the provision for sawed lumber, not further manufactured than planed, and tongued and grooved (the latest being the provision in paragraph 1803 (1), Tariff Act of 1930, under which claim is here made), constitute legislative approval of administrative practice.

In *Rapken & Co., Ltd.* v. *United States*, 25 C. C. P. A. (Customs) 268, T. D. 49393, our appellate court had occasion to consider the effect of administrative practice as an aid in the interpretation of tariff statutes and said:

In numerous decisions of the Supreme Court of the United States, the rule has been laid down that for administrative practice to be even persuasive in a case, it must be proved to have been known, long continued, uniform and general.

The *Dollar Savings Bank* v. *United States*, 86 U. S. 227; *Merritt* v. *Cameron*, 137 U. S. 542; *United States et al.* v. *Missouri Pacific Railroad Co.*, 278 U. S. 269.

and, in *United States* v. *Edward I. Petow & Son*, 34 C. C. P. A. (Customs) 55, C. A. D. 343, on the same subject, the following was said:

It is true, as often has been stated (decisions in point being the cases of *Bache & Co.* v. *United States*, 11 Ct. Cust. Appls. 314, T. D. 39129, and *United States* v. *H. Bayersdorfer & Co.*, 16 Ct. Cust. Appls. 43, T. D. 42717, and cases therein cited) that it is a well-known rule of construction in customs law that the reenactment of a statute implies an approval by Congress of a long-established administrative practice under it where satisfactory proof of such practice is made, and that in the classification of merchandise under the tariff acts such rule is regarded with favor by the courts.

It will be noted that, in the *Rapken* case, it was stated that certain facts with respect to the claimed administrative practice, i. e., that it was known, long continued, uniform, and general, must be *proved*, and, in the *Petow* case, that *satisfactory proof* of administrative practice must be made.

Aside from the citation of T. D. 34198 in the brief filed on behalf of the Government, no effort was made to offer any evidence, testimonial or otherwise, with respect to the existence or character of the administrative practice claimed to be represented thereby.

We do not think, in view of the foregoing from the *Rapken* and *Petow* cases, that the mere citation in a brief of a single instance of a departmental instruction to one collector of customs, without any other showing with respect to the required elements of proof of administrative practice, is sufficient upon which a finding of legislative approval of long-continued administrative practice can be made.

We are of the opinion, furthermore, that, under the principle expressed in the *Hampton* case, *supra*, the processes of effecting the Linderman joint and edge gluing the 2-piece stock did not constitute manufacturing processes removing the merchandise from the purview of paragraph 1803 (1), *supra*.

Defendant further argues that the imported 2-piece stock had been cut to particular shape, condition, and dimensions, which so far advanced it as to make it suitable only for finishing into drawer sides for bedroom furniture. This argument seems to have been predicated upon the fact that the merchandise was ordered and shipped in accordance with specific dimensions.

The evidence shows that the shape, condition, and dimensions in which the merchandise was imported were the result of sawing, planing, tonguing, and grooving, that is to say, operations which were within the purview of paragraph 1803 (1), *supra*. The rule

applicable in such cases was laid down in *United States* v. *C. S. Emery & Co.*, 18 C. C. P. A. (Customs) 208, T. D. 44399, as follows:

\* \* \* We are of the opinion, however, that for lumber to be classified as free under paragraph 1700 [of the Tariff Act of 1922, the predecessor in all material respects of paragraph 1803 (1) of the present act], the sawing, planing, and tonguing and grooving processes must not be such a manufacturing of the same as to remove it from the category of lumber which still remains a material.

The wording of the free-list paragraph would indicate that Congress contemplated the free listing of certain lumber which had been manufactured, such as flooring and ceiling, although the processes of manufacture employed might result in a manufacture of wood, *and although the wood, when so manufactured, was designed to be used and fit only for use for one definite purpose.* But, we see nothing in the paragraph that would indicate that a floor or a ceiling, made from the manufactured lumber, should be free. [Italics added.]

Tested by the foregoing, and applying the facts in the case at bar, the imported 2-piece stock is found to be material made of wood by processes of sawing, planing, tonguing, and grooving, designed to be used and fit only for use in the manufacture of drawer sides. It is not, in its imported condition, drawer sides, and requires much further manufacturing effort to make it such. It is not otherwise specially provided for and is, therefore, properly classifiable under paragraph 1803 (1), *supra*, as claimed.

Judgment will issue sustaining the protest claim for free entry under that paragraph, with consequent assessment of tax or duty under the provisions of section 4551 (1) of the Internal Revenue Code of 1954, as modified, *supra*, accordingly.