BEFORE THE FIRST DIVISION, JANUARY 8, 1964

No. 68213.—P. W. Drittler v. United States, protests 60/22176, etc. (Detroit).

OLIVER, Chief Judge: The protests enumerated in schedule "A," hereto attached and made a part hereof, involve merchandise that is generally described on the invoices as lumber cores, birch cores, or edge-glued hardwood lumber. Duty was levied thereon at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930, as modified by T.D. 52373, for manufactures of wood, not specially provided for.

Plaintiff's principal claim is for free entry under the provision in paragraph 1803(1) of the Tariff Act of 1930, as modified by T.D. 51802, for "sawed lumber

and timber, not further manufactured than planed, and tongued and grooved; * * * not specially provided for," with consequent assessment of tax at the rate of $1.50 per thousand feet, board measurement, under section 4551(1) of the Internal Revenue Code of 1954. An alternative claim is made for classification under the provision for nonenumerated manufactured articles in paragraph 1558 of the Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52827, carrying a duty assessment at the rate of 10 per centum ad valorem.

Three witnesses testified. Two appeared on behalf of plaintiff; one for the defendant.

The sales manager of the foreign exporter of the wood in question, concededly yellow birch, identified a sample thereof (plaintiff's exhibit 1) and described the processing to which it was subjected prior to importation. Yellow birch is logged and transported to the sawmill, where it is reduced to lumber dimension, kiln-dried, surface planed, and then ripped with a gangsaw into strips of maximum width of 2½ inches. Surface defects, including splits, long knots, and rot pockets, are removed by cross-cutting. Ten of these strips, at random lengths, are edge-glued by mechanical process and then passed, side by side, through a high frequency bonding press in which they are pressed tight and welded together by the glue. The resulting lumber, which is 8 feet long, 24 inches wide, and surface planed to a final thickness of five-eighths of 1 inch, is the imported commodity. From the testimony of the witnesses for both sides, it appears that the present merchandise is used largely as a core in plywood construction. There is also some use, in the California market, in the manufacture of solid furniture tops, tabletops, door fronts, and shelves.

To support its claim for free entry under paragraph 1803(1), as modified, *supra*, plaintiff cites *B. A. McKenzie & Co., Inc.* v. *United States*, 39 Cust. Ct. 52, C.D. 1903. There, the merchandise consisted of certain so-called "2-piece stock" that was shown to be substantially the same, with respect to the extent of manufacture and ultimate use, as "1-piece stock," which was admittedly properly classifiable under said modified paragraph 1803(1). The sole difference between them, as stated by the court, was that "in the case of the 1-piece stock, the wood was originally sufficiently wide for the width dimension desired, while, in the case of the 2-piece stock, the wood originally was not sufficiently wide, and the two pieces were joined together by what is known as the Linderman joint (a type of dovetail joint, running lengthwise) and glued under pressure so as to provide the width desired." Based upon a finding that the fitting of the Linderman joint and the gluing under pressure merely made two narrow pieces of wood into one wide piece, the court held the 2-piece stock to be properly classifiable under the same provision invoked by the collector for the 1-piece stock.

In this case, plaintiff seeks to have applied to the present issue the same reasoning as that which was employed in the *McKenzie* case. To do so, plaintiff has assumed that yellow birch obtainable in nature in a width of 24 inches is 1-piece stock, and that the imported merchandise in question, which is made up of 10 strips of yellow birch, 2½ inches in width, of uneven lengths, butt-jointed, and edge-glued, is comparable to 2-piece stock. Such a comparison is not supported by the record. Plaintiff's evidence shows that the usual width of yellow birch obtainable in nature is 7½ inches, and that widths of 25 inches (plaintiff's exhibit 2) and 26½ inches (plaintiff's exhibit 3) are unusual and infrequent, because "the logs of the diameter required for this width of cut are not plentiful." (R. 31.) In the *McKenzie* case, the 1-piece stock and the 2-piece stock were imported in the same shipment, and the importer claimed the same tariff treatment for the 2-piece stock that the collector had applied

to the 1-piece stock. Furthermore, it was not disputed in the cited case that, except for the difference in width, the two kinds of lumber were identical with respect to their extent of manufacture and their ultimate use. No comparable condition can be drawn from the record in this case between 24-inch yellow birch and the merchandise under consideration. The *McKenzie* case is clearly distinguishable from the present one.

Of controlling influence is *C. S. Emery & Company* v. *United States*, 41 Cust. Ct. 7, C.D. 2013, which involved certain lumber material, known as knotty pine paneling, that had been classified under paragraph 412 of the Tariff Act of 1930, as modified, as a manufacture of wood, not specially provided for. Alternative claims were made for classification either as sawed pine lumber, not specially provided for, under paragraph 401, as modified, or as a nonenumerated manufactured article under paragraph 1558, as modified. The method of producing the commodity in question was described by the court as follows:

The merchandise involved is what is called "knotty pine paneling" and was produced by using sawed boards of the requisite width and kiln-drying the same. The boards were then cut off square at each end, and then put through a planing machine which had multiple knives so adjusted as to plane two sides of the board, place a tongue on one edge and a groove in the other edge, and bevel both edges.

In addition to the foregoing series of processes, the paneling was put through a drum sanding machine which sanded one face of the paneling, making the sanded face "satin smooth."

In fixing the classification of the knotty pine paneling, the court, in the *Emery* case, concluded as follows:

The merchandise at bar is lumber or wood which has been manufactured beyond the condition of being only planed, tongued, and grooved, which would have left it within the purview of paragraph 401, *supra*. The additional process of manufacture, sanding, however, did not convert it into a manufacture of lumber or wood, but merely left it lumber or wood, manufactured. There being no more specific provision for such material, it takes classification and duty under the catchall provision in paragraph 1558, *supra*, for nonenumerated manufactured articles.

In the present case, the yellow birch under consideration has been further manufactured than planed, and tongued and grooved, which removes it from classification under amended paragraph 1803(1), *supra*, sought by plaintiff. However, the additional processing, consisting of edge-gluing, pressing, and welding together 10 strips of yellow birch, did not advance or convert the imported commodity into a manufacture of wood, but merely left it to be lumber or wood, manufactured. Consistent with the court's conclusion under a comparable set of facts presented in the *Emery* case, *supra*, the yellow birch involved herein, like the pine paneling considered in the cited case, is properly classifiable under the catchall provision in paragraph 1558, as modified, for nonenumerated manufactured articles.

The case of *Clarence S. Holmes, a/c Best Products Mfg. Co.* v. *United States*, 44 Cust. Ct. 111, C.D. 2161, cited in plaintiff's brief, followed the *Emery* case, *supra*, and held certain pieces of wood, ranging in width from 14 inches to 29 inches, and made by gluing together under high pressure, on their lengthwise edges, two or more pieces of maple lumber or boards, to be dutiable under paragraph 1558, as modified, *supra*, as nonenumerated manufactured articles. The said *Holmes* case supports our reasoning and conclusion in this case.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the merchandise in question, generally described on the invoices as lumber cores, birch cores, or edge-glued hardwood lumber, to be dutiable at the rate of 10 per centum ad valorem under the provision in paragraph 1558 of

the Tariff Act of 1930, as modified, *supra*, for nonenumerated manufactured articles, as alleged by plaintiff.

That claim in the protests is sustained and judgment will be rendered accordingly.