(C.D. 3991)

C. B. Smith Co. *v.* United States

---

[5] See also, Webster's Third New International Dictionary, 1968.

United States Customs Court, First Division

(Decided April 6, 1970)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Robert E. Burke*, trial attorneys), for the defendant.

Before WATSON and MALETZ, Judges, and WILSON, Senior Judge

WILSON, Judge: These protests were consolidated for trial.

The imported merchandise was exported from Japan and entered at the port of Los Angeles on February 4, 1966. The district director classified the imported material under item 207.00 of the Tariff Schedules of the United States (TSUS) as "Articles not specially provided for, of wood" and assessed duty at the rate of 16⅔ percent ad valorem.

Plaintiff claims under item 202.53 (TSUS) as "hardwood, edge-glued or end-glued, not over 6 feet in length or over 15 inches in width, and not drilled or treated," at the rate of 5 percent ad valorem. An

alternate claim in protest 67/48157(A) was abandoned (R.4) and will be dismissed.

The following are the pertinent provisions of the Tariff Schedules of the United States:

Assessed under: Schedule 2, Part 1:

"SUBPART F.—ARTICLES NOT SPECIALLY PROVIDED FOR, OF WOOD

Subpart F headnote:

1. This subpart covers all products of wood which are not provided for elsewhere in the tariff schedules.

207.00 Articles not specially provided for, of wood _____ 16⅔% ad val."

Claimed under: Schedule 2, Part 1:

"SUBPART B.—LUMBER, FLOORING, AND MOLDINGS

Subpart B headnotes:

1. This subpart covers lumber, wood siding, wood flooring, wood moldings, and certain wood carvings and ornaments, including such products when they have been drilled or treated.

2. For the purposes of this part, the following terms have the meanings hereby assigned to them:

(a) Lumber: A product of a sawmill or sawmill and planing mill derived from a log by lengthwise sawing which, in its original sawed condition, has at least 2 approximately parallel flat longitudinal sawed surfaces, and which may be rough, dressed, or worked, as set forth below:

(i) rough lumber is lumber just as it comes from the saw, whether in the original sawed size or edged, resawn, crosscut, or trimmed to smaller sizes;

(ii) dressed lumber is lumber which has been dressed or surfaced by planing on at least one edge or face; and

(iii) worked lumber is lumber which has been matched (provided with a tongued-and-grooved joint at the edges or ends), shiplapped (provided with a rabbeted or lapped joint at the edges), or patterned (shaped at the edges or on the faces to a patterned or molded form) on a matching machine, sticker, or molder.

Edge-glued or end-glued wood over 6 feet in length and not over 15 inches in width shall be classified as lumber if such wood as a solid piece without glue joints would be deemed to be lumber as defined above.

\* \* \* \* \* \* \*

> Lumber and wood siding, drilled or treated; and edge-glued or end-glued wood not over 6 feet in length or over 15 inches in width, whether or not drilled or treated:

   \*       \*       \*       \*       \*       \*       \*

202.53         Hardwood, edge-glued or end-glued, or treated_____ 5% ad val."

The issue as presented is whether the imported merchandise is encompassed within the provision for hardwood, edge-glued or end-glued in item 202.53 (TSUS), *supra*. The plaintiff replies in the affirmative. The defendant's brief, pages 1 and 2 states:

> "\* \* \* The Government's position is that the merchandise is 'face-glued' and thus cannot be classified under item 202.53, whereas the plaintiff contends that *all* such glued-up lumber, regardless of which surface of the wood may be glued, is included within the meaning of 'edge-glued and end-glued' as applied in item 202.53 of said Schedules."

The court finds no specific provision for merchandise "face-glued" in the foregoing statutory provisions or elsewhere in TSUS, so that the defendant's contention is relegated to the catch-all provision in 207.00 for "Articles not specially provided for, of wood."

The plaintiff and the defendant each introduced the testimony of two witnesses. Plaintiff also introduced seven illustrative exhibits marked 1 to 7. The defendant introduced collective exhibits marked A–1, A–2, A–3, A–4 and illustrative exhibits marked B, C and D. The oral testimony and the exhibits will be considered as the court deems essential hereinafter in this decision.

The primary issue is whether the imported merchandise is "face-glued," for which there is no specific provision, and therefore subject to duty as classified under the catch-all provision for "Articles not specially provided for, of wood" in item 207.00 of TSUS, or within the provision for hardwood, edge-glued or end-glued, not over 6 feet in length or over 15 inches in width, and not drilled or treated, in item 202.53 as claimed by the plaintiff. At the opening of the trial, counsel stipulated (R.38) as follows:

> "Mr. Shostak: I offer to stipulate that the birch lumber at issue herein consists of hardwood which is glued, and which is not drilled, and not treated, and that it is not over 6 feet in length, and not over 15 inches in width in its condition as imported, and also that it is not dedicated to any particular use."

> "Mrs. Ziff: I have conferred with the line examiner, and so agree."

The court in *Procter & Gamble Manufacturing Co.* v. *United States*, 19 CCPA 415, 418, T.D. 45578 (1932), stated:

"It is a cardinal rule of statutory construction that if the language used by the legislative body in the act is so plain and unambiguous as to be readily understood, then there can be no reason or grounds for applying judicial rules of construction to ascertain its meaning. *United States* v. *Littwitz*, 18 C.C.P.A. (Customs) 341, T.D. 44588; *Maxwell* v. *Moore*, 22 How. 185; *Western Cartridge Co.* v. *du Pont*, 16 Ct. Cust. Appls. 229, T.D. 42839; *United States* v. *Innis, Speiden & Co.*, 7 Ct. Cust. Appls. 3, T.D. 36254; *Lake County* v. *Rollins*, 130 U.S. 662, 670; *United States* v. *Lexington Mill Co.*, 232 U.S. 399, 409; *Van Camp* v. *American Can Co.*, 278 U.S. 245, 253.

"The master rule, in the consideration of all statutes, has been to so interpret them as to carry out the legislative intent. *Markell* v. *United States*, 16 Ct. Cust. Appls. 518, T.D. 43239; *United States* v. *Oregon, etc.*, 164 U.S. 526, 539; *Hawaii* v. *Mankichi*, 190 U.S. 197, 213; *United States* v. *Katz*, 271 U.S. 354." Also *Jana Sales Co., Inc.* v. *United States*, 56 CCPA 24, C.A.D. 947 (1968), and *American Express Company* v. *United States*, 61 Cust. Ct. 208, C.D. 3573 (1968), appeal pending.

The term "face-glued" is not within the statutory language of item 207.00 [1] as classified and is not within the statutory language of item 202.53 [2] as claimed. Hence where does imported merchandise belong for classification purposes when counsel agree that it consists of "hardwood which is glued, and which is not drilled, and not treated, and that is not over 6 feet in length, and not over 15 inches in width in its condition as imported, and is not dedicated to any particular use"? (R. 38.) The court does *not* consider that the statutory language involved is free from ambiguity or can be readily understood. The court believes that in the instant case there are reasons or grounds for applying judicial rules of construction and for considering as well other aids to ascertain its meaning so as to carry out the legislative intent.

In *B. A. McKenzie & Co., Inc.* v. *United States*, 39 Cust. Ct. 52, C.D. 1903 (1957), the First Division [consisting of Judges Oliver, Mollison and Wilson, in a decision by Judge Mollison] held that merchandise described on the invoice as "2-piece stock, sawed lumber, planed, tongued, grooved, and edge glued," assessed at 16⅔ per centum ad valorem under the provision for manufactures of wood, not specially provided for, in paragraph 412, Tariff Act of 1930, as modified by the Presidential proclamation carrying out the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, reported in 84 Treas. Dec. 403. T.D. 52373, was classifiable under paragraph 1803(1) as "sawed lumber and timber, not further

---

[1] Paragraph 412, Tariff Act of 1930, provided for "manufactures of wood * * * not specially provided for" and is the predecessor of item 207.00 TSUS.

[2] Paragraph 1803(1) of said Act is the predecessor of item 202.53 TSUS.

manufactured than planed, and tongued and grooved; * * * not specially provided for." The court indicated (39 Cust. Ct. at page 55) that

"* * * The merchandise was merely wood material, lumber, before the processes [of gluing the edges thus building up the material] were applied thereto, and it was wood material, lumber, when it emerged from those processes. Its *per se* character as lumber was not changed at all."

So too, on the record in the case at bar, the imported merchandise consists of lumber material, before and after gluing.

The Treasury Department, by the Commissioner of Customs in 93 Treas. Dec. 204, T.D. 54595 (May 19, 1958), stated in reference to the *McKenzie* decision principle, that it

"* * * will be applied to *glued stock*, including jointed and glued stock, including jointed and glued stock whether joined by a Linderman joint or similar process, of a length, width, and thickness which is recognized in the trade as lumber if of one-piece material. This principle will apply *whether* the stock is *edge-glued, end-glued, both edge-glued and end-glued, or jointed and glued.*" [Emphasis added.]

The foregoing expression by the Customs did not distinguish between material glued on its narrow side [edge-glued] or on its wide side [face-glued].

In *Clarence S. Holmes, a/c Best Products Mfg. Co.* v. *United States,* 44 Cust. Ct. 111, C.D. 2161 (1960), the court held glued-up stock used in the manufacture of parts of furniture, which were imported in sizes that were not obtainable in nature or in one-piece stock, was classifiable under paragraph 1558 of the Tariff Act of 1930. The court stated that the process to which the maple plates "had been subjected prior to importation did not alter their status from that of a wood material to that of a manufacure of wood."

In *C. S. Emery & Company* v. *United States,* 41 Cust. Ct. 7, C.D. 2013 (1958), relied upon in *Holmes, supra,* the court held certain pine paneling which had been sanded was still only lumber or wood material rather than a manufacture of wood. It was held classifiable under paragraph 1558.

The same reasoning was applied in *P. W. Drittler* v. *United States,* 52 Cust. Ct. 227, Abs. 68213 (1964), with reference to edge-glued birch cores used in plywood construction and in furniture which were held classifiable under paragraph 1558 rather than paragraph 412.

Thus, under the foregoing cases, the court held under the 1930 Tariff Act, that glued-up stock, not dedicated to a particular use, be regarded as wood material which is not classifiable as a manufacture

of wood under paragraph 412, the predecessor of item 207.00 TSUS, adopted for classification herein by the district director.

The National Lumber Manufacturers Association urged at the hearings on the proposed tariff schedules held on April 10, 1958 at pages 242, 250, Tariff Classification Study, Schedule 2, that glued-up stock "face glued" or "laminated lumber" be specifically excluded from the definition of lumber in the headnote. Nevertheless, the proposed provisions published in 1960 by the Tariff Commission included edge-glued and end-glued wood not over 15 inches in width and over 6 feet in length within its definition of lumber, subpart B, headnote 2(a), but did not exclude "face glued" wood as requested by the said Association. It did provide for glued-up wood, id. at pages 3, 6.

The Tariff Classification Study, First Supplemental Report (1962), pages 13, 14, divided the intended provision of item 202.54 TSUS into items 202.52 and 202.53.

In explanatory notes, the Tariff Commission (Tariff Classification Study, Schedule 2, at pages 17, 18, 21), indicated that "glued-up" lumber had been, from time to time, imported and was classified as lumber in paragraphs 401, 1803(1) and IRC section 4551(1) or the "basket" provision for manufactures of wood, according to whether it was put up in widths and lengths as to be generally defined and uniformly known as lumber in the trade and commerce of the United States (T.D. 54917(11)). The Commission also indicated that the "matter is not one which can be clearly resolved from such rulings," as to classification.

In the Fifth Supplemental Report (1963) the current item 202.53 was proposed. Page 85 discloses the Commission's explanation that item 202.53 takes into account the equities involved in customs practices relating to glued-up hardwood, citing as examples T.D. 54595 and T.D. 55708(1). It states that by virtue of headnote 2(a) of part 1B, the provisions of the new schedules relating to lumber, rough, dressed or worked apply to "Edge-glued or end-glued wood over 6 feet in length and not over 15 inches in width * * * if such wood as a solid piece without glue joints would be deemed to be lumber as defined above" in the same headnote. It further indicates that new schedules apply to the lumber rates of duty for all glued-up wood covered by present practices, "except that which is either not over 6 feet in length or is over 15 inches in width." It further disclosed that

" * * * Although any attempt to provide a logical, systematic treatment of glued-up wood involves the drawing of arbitrary lines of demarcation, the dimensions set forth in headnote 2(a) for glued-up wood are believed to be reasonable and desirable. For the most part, glued-up wood not over 6 feet in length or over 15 inches in width is dimension stock fabricated to specifica-

tion and can be regarded only loosely as lumber. Very often such dimension stock is used in applications where one-piece lumber is not best suited for use due to its greater tendency to warp and split.

"In the circumstances, and to balance the equities involved in existing customs practices, the foregoing new provision has been introduced. *This provision applies a compromise rate of 5 percent ad valorem to all glued-up hardwood lumber not conforming to the provisions of headnote 2(a) because of such glued-up stock being too short or too wide, or both.*" [Emphasis added.]

The National Lumber Manufacturers Association once more wrote to the Tariff Commission in which it urged that glued or laminated wood be excluded from the definition of lumber, id. at pages 223–227. The Newton Lumber Corporation of Roslyn Heights, New York, also wrote and suggested an amendment to item 202.53, and also purported to explain the difference between "edge-gluing" and "face-gluing," id. at page 227. However, the Tariff Commission adhered to its definition and published item 202.53 without any change in its explanation, id. at page 9. It made no further changes in the provisions prior to August 31, 1963, the effective date of the Tariff Schedules of the United States, and made no modifications in language thereof.

In *A. N. Deringer, Inc.* v. *United States*, 61 Cust. Ct. 66, C.D. 3530, 287 F. Supp. 1016 (1968), the involved merchandise consisted of wedge-shaped wooden articles denominated "horsefeathers." Classification was made under item 207.00 as articles of wood, not specially provided for and assessed with duty at 16⅔ percent ad valorem. Importer claimed under item 202.03 as spruce lumber dutiable at 35 cents per thousand feet board measure. The court indicated that the National Lumber Manufacturers Association had suggested to the Tariff Commission that the proposed schedules be prepared so as to distinguish between lumber and manufactures of wood depending upon whether the article had been "so far advanced so that it can be used only for a definite purpose * * *." However, the court observed that the schedules as enacted, did *not* make the suggested distinction. The court stated:

"The distinction thus recommended having been rejected by the Tariff Commission and Congress, it is apparent that the classification of horsefeathers as lumber is in no way changed because horsefeathers are 'used for one thing only' or are so far advanced that they 'can be used only for a definite purpose.'" [61 Cust. Ct. at page 74.]

The court made a similar determination with respect to the intended classification of assembled or laminated planks. *D. B. Frampton &*

*Company, Dorf International, Inc.* v. *United States,* 60 Cust. Ct. 4, C.D. 3243, 277 F. Supp. 1014 (1968).

As heretofore noted, the rejection of the recommended distinction between "edge-gluing" and "face-gluing" and the classification of glued-up stock, was not dependent upon whether the glue was applied to any specific or particular side. The explanation of item 202.53 by the Tariff Commission discloses that *all* glued-up hardwood, not of lumber size, and not drilled or treated, and including dimension articles such as the imported articles herein involved, is to be classified under item 202.53 and at 5 percent ad valorem as "edge-glued or end-glued" hardwood. As Congress did not make the requested distinction in respect to "face-glued," it may be inferred that the Congressional intent was to consider merchandise which is "edge-glued," "end-glued" and/or "face-glued" as coming within item 202.53.

Plaintiff's witness, Mr. Smith, has been in the lumber business since 1934. His testimony discloses his abundant familiarity therein and with the imported merchandise, as well as with the rules of the National Lumber Manufacturers Association of which association he has been a member for over 30 years. He stated that it is impossible to tell by looking at the grain alone which is the edge or face of squares or other kinds of lumber unless a special type of grain, like a stripe, is ordered.

Plaintiff's witness Mr. Pastornak has been in the lumber business since 1946. He specialized in furniture squares and allied products to the furniture industry. He is a 1941 graduate of the University of Minnesota, majored in forestry and took courses in botany, chemistry, physics, mathematics and dendrology and wood technology in cellular structure of wood. His testimony discloses familiarity with glued-up stock and with the imported merchandise.

Defendant's witness Mr. McKinney has purchased and sold lumber since 1947 for several firms while sales manager, buyer or in charge of sales. He claims familiarity with the terminology used in the lumber trade. He stated he would call the narrow side of exhibit A–1 an "edge" and the broad side a "face" and that "face" is used in grading; that exhibit 1 consists basically of three pieces of exhibit A–1 glued together. He did *not* understand the definition of "edge" from Webster's Third New International Dictionary and said "That doesn't mean anything to me." He said he was *not* in the dimension manufacturing business and "I don't know what it is as dimension or furniture parts, or some manufactured item." He "absolutely" could *not* tell by looking at exhibit 2 whether the parts are glued face to face "Because it is no longer lumber. It is a manufactured product." Much of McKinney's testimony is negative and is deemed insufficient to counteract the testimony of Smith and Pastornak.

Defendant's witness Mr. Pierce claims to have 25 to 30 years experience in the hardwood lumber business and "thinks" he is familiar with the terminology used in the lumber trade respecting glued and solid lumber. He alleges familiarity with merchandise of the type of exhibit 1 and said "It is a laminated, face glued piece prepared to a square probably for turning into a leg of some sort." It is a process of "face gluing" and he never heard an article such as exhibit 1 described as edge-glued. He made exhibit B (a large leg) by laminating and *possibly* edge-gluing and by face-gluing and marked exhibit B with an "F" where it was face-glued, and placed on "E" along the base where it was edge-glued. He never glued-up squares and could *not* tell whether exhibit 2 was squares glued-up, but might have been at one time. He could *not* tell how many faces or edges it had, and did *not* know if two squares were glued together and were not end-glued what the term in the trade would be called, *as he never did it*. He did *not* know the term where surfaces would be glued together if they were not ends, did *not* know whether that type of gluing was done in the industry. He *cannot* tell which is a face or edge in a square. He said he distinguished between faces and edges in a square only by the grain characteristics and can determine the face or edge in most cases but "I don't know about all the trade, but I can." [Mr. Smith as previously noted herein said it was impossible to tell by looking at the grain alone, which is the edge or face of squares.] Pierce's testimony is negative in many instances, and as a whole, does not overcome the testimony of Smith and Pastornak.

The defendant argues in its brief that the words "face," "end" and "edge" have clear distinctions, and also that "face-gluing," "end-gluing" and "edge-gluing" are different. If that be so, the attention of Congress was called thereto through the Tariff Commission on two occasions by the National Lumber Manufacturers Association and by the Newton Lumber Corporation. Yet, Congress did not change its proposed item 202.53 prior to or subsequent to its enactment. Failure or refusal by Congress to make a change foreshadows acquiescence that those terms, and each of them, are encompassed within item 202.53 TSUS. This would disrobe the cloak of presumption ordinarily attached to the classification made by the district director.

It is not the suggested changes made by business firms or associations which create laws. Nor is it the recommendations which are urged by the Tariff Commission, the Bureau of Customs, or the Treasury Department. It is Congress which makes the law and it is the Congressional intent in so doing which must be ascertained and followed by the courts.

The cases of *V. G. Nahrgang* v. *United States*, 48 Cust. Ct. 6, C.D. 2307 (1962), and *U.S.D. Importing Co. et al.* v. *United States*, 44 Cust. Ct. 360, Abs. 63864 (1960), cited by defendant are not controlling herein, for the court stated, 48 Cust. Ct. at 18, that "The statutory language, or designation, involved herein is free from ambiguity; hence, its judicial interpretation must come from the act itself. *United States* v. *Perry River* [*Ryer*] *& Co.*, 41 C.C.P.A. (Customs) 18, C.A.D. 524." See 44 Cust. Ct. at 362. In the case at bar, this court holds to the contrary with respect to item 202.53 TSUS, and other guides may be considered for determining Congressional intent in promulgating statutes. *The A. W. Fenton Co., Inc.* v. *United States*, 55 CCPA 54, C.A.D. 933 (1968).

Upon consideration of all of the testimony of all witnesses, and a perusal of all of the exhibits, particularly exhibits 1 and 2 that are representative of the imported merchandise, which are potent witnesses (*United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932); *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958)), the legislative history resulting in Congressional lack of adopting suggested changes in the contemplated language for the creation of item 202.53 TSUS, the arguments of counsel and the cases cited in this decision, the court is of the opinion that the plaintiff has presented a *prima facie* case in support of its claim in the protests for classification of the imported merchandise as "hardwood, edge-glued or end-glued not over 6 feet in length or over 15 inches in width, and not drilled or treated" dutiable at the rate of 5 percent ad valorem under said item 202.53 TSUS.

Judgment will therefore be entered accordingly. The alternate claim in protest 67/48157(A) having been abandoned will be dismissed.